RAY *v.* ONE BLOCK OF MARBLE.

*(District Court, S. D. New York.   January 26, 1884.)*

DEMURRAGE—BILL OF LADING—READINESS TO DISCHARGE.

Where the bill of lading for a block of marble weighing seven tons provided that it should be disharged by the receiver within six hours after written notice of the master's readiness to deliver it, or pay demurrage, £15 per day, *held,* that the ship was bound to afford reasonable and customary facilities for the discharge; and the receiver being prepared to move the vessel some 250 feet to the usual place of discharge at his own expense, as was usual, and the mate, in the absence of the captain, having repeatedly refused to permit the vessel to be thus moved, partly for the reason that she had not her anchors aboard, *held,* that she was not in readiness to deliver within the meaning of the bill of lading, and could not recover during the time of such refusal.

Action for Demurrage.

*A. J. Heath,* for libelant.

*W. W. Goodrich,* for claimant.

BROWN, J.   This action was brought to recover demurrage for delay in the discharge of a block of marble weighing about seven tons. The bill of lading contained the following clause:

"The marble to be discharged in New York, at the expense and risk of the receiver, six hours after written notice being given by the master that he is ready to deliver the same, or to pay demurrage at the rate of fifteen pounds sterling per running day."

To discharge her general cargo the vessel went to Coe's stores and lay along-side a bulkhead, at right angles with the line of the pier, near the end of which a permanent derrick was erected, and which was the usual and chief place in this city for the discharge of blocks of marble. The vessel was only about 250 feet distant from this derrick. The consignee was notified of readiness to discharge by a postal-card, mailed to him on a Friday forenoon, and which was received at his office at about 5 P. M.   This was too late to be a valid notice for that day. The consignee had previously engaged Mr. Smith, the proprietor of the marble yard and derrick close by, to unlode the marble as soon as the vessel was ready.   Mr. Smith had previously, on Friday, sent his son to the vessel to arrange to have her hauled to the derrick, 250 feet further along the bulkhead and pier, in order to discharge the marble.   The captain was absent from the vessel, and the mate declined to say anything on the subject in his absence.   It was a usual and customary thing for vessels discharging other cargo near by, and also having marble aboard, to discharge the marble at this slip, and to be hauled along-side the derrick by Mr. Smith's men for the purpose of quick discharge; and vessels waiting to discharge marble were usually hauled along-side the derrick in turn by Mr. Smith's men.   On Saturday morning the consignee again went to the vessel with Mr. Smith, or his son, and again requested permission to move the vessel to the derrick, and offered sufficient men to move her

at once. The captain was again absent, and the mate declined to do anything. They remained there till near noon, and the captain not appearing, they went away. The day was very stormy, and no removal of the block of marble could safely have been made by the use of shears. On Monday morning, the vessel being in readiness to proceed to Hunter's Point to load, procured a tug for that purpose, and in passing out of the slip stopped a short time at the derrick, where the block was speedily discharged by Mr. Smith, and the vessel then proceeded on her way. She now claims three days' demurrage.

Upon the facts stated the claim of demurrage seems to me destitute of any equity. Had the vessel got her spare anchor and chains aboard on Friday or Saturday and been then really ready to move, there is no reason to suppose any refusal would have been made to the request to suffer her to be hauled along-side the derrick for the purpose of discharging the marble. The request was a reasonable one, and I am satisfied the moving of the ship would have been attended by no difficulty or danger. The condition of the bill of lading, requiring removal of the marble within the short time of six hours after the vessel was ready to discharge, imposed on the captain at least the duty of permitting her to be hauled in the usual manner and at the consignee's expense to a place where the discharge could be made expeditiously. Upon an agreement for discharge in so short a time, it must be implied that the ship would accede to any reasonable and customary facility for discharging. This was twice proposed to the vessel and twice refused, the captain not being present to answer, though it was business hours and he was long waited for. The mate's answer, that the vessel was not ready to move on account of the spare anchor and chains which were still on shore, shows that the vessel was not in fact "ready to discharge" the marble within the meaning of the bill of lading, because she was not ready to be moved the short distance of 250 feet, which the consignee had the reasonable and customary right to have her moved at his own expense. On Monday she had got her anchors aboard and was then ready, and she then proceeded to the derrick and discharged the block with no substantial detention. I think it is clear that she did not in fact sustain any detention through any acts of the consignee; and the libel should be dismissed, with costs.